IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA REYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 6211 |
| v. ) | |
| ) | Magistrate Judge |
| CAROLYN W. COLVIN, ) | Maria Valdez |
| acting commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Maria Reyes ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her claim for Social Security Disability Insurance ("SSDI") benefits. The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court denies Plaintiff's Memorandum in Support of Summary Reversal or Remand, and grants the Commissioner's Motion for Summary Judgment [Doc. No. 24].

## BACKGROUND

I.  **PROCEDURAL AND FACTUAL HISTORY**[1]

Plaintiff previously worked as a factory assembler for seven years, which required extensive use of her hands. Unfortunately, in 2009, she was diagnosed with carpal tunnel syndrome and found herself unable to continue working. She attempted to resolve the problem through physical therapy and medication but was met with limited success. She then had carpal tunnel release surgery on her right hand in July 2009 and on her left hand in September 2009. To make matters worse, Plaintiff developed back and neck problems during this same period, related to herniated discs in her lumbar and cervical spine. The combination of these medical problems led her to file a Title II application for SSDI benefits on July 6, 2010, alleging a disability onset date of June 5, 2009. Her application was denied initially and upon reconsideration. Plaintiff thus requested and received a hearing before an Administrative Law Judge ("ALJ"), who determined that she was not disabled at Step Four of the Social Security Administration's sequential analysis.

In her opinion, the ALJ found that Plaintiff suffered from the following severe impairments: history of bilateral carpal tunnel syndrome and degenerative disc disease of the lumbar and cervical spine. After determining that Plaintiff did not meet any listed impairment, the ALJ then calculated her Residual Functional Capacity ("RFC") and found that she could perform medium work with the following exceptions: she should no more than occasionally climb ladders, ropes, or scaffolds;

---

[1] The following facts from the parties' submissions are undisputed unless otherwise noted.

and she should no more than frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl.

The ALJ then consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform her past relevant work or any jobs in the national economy. On the basis of her RFC assessment and the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work and thus found that she was not disabled under the Social Security Act.

## **STANDARD OF REVIEW**

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389

(7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

A court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding

4

questions of credibility. *Skinner*, 478 F.3d at 841. Thus, where conflicting evidence would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, challenging the following: (1) the ALJ's analysis of the medical evidence; (2) the relative weight given to her treating physicians' opinions; and (3) the ALJ's credibility finding. The Court will address each issue in turn.

I.   **The ALJ's Analysis of the Medical Evidence**

Plaintiff first challenges the ALJ's decision not to include any manipulative limitations in her RFC, despite carpal tunnel syndrome being one of her chief complaints. The ALJ, however, offered numerous, valid reasons for doing so. First, Plaintiff had carpal tunnel release surgery on both hands in 2009, after which she reported improvement to her doctors. (*See, e.g.,* R. 399.) Second, after a consultative exam in 2010, the Consultative Examiner ("CE") found that Plaintiff had full grip strength and no difficulties with fine and gross manipulative movements.[2] And third, two reviewing agency physicians opined that Plaintiff suffered no manipulative limitations whatsoever after she recovered from her carpal tunnel release surgeries.[3] *See Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005); *SSR*

---

[2] The CE also administered three tests for carpal tunnel syndrome in both hands, all of which produced negative results. (R. 693.)
[3] Plaintiff attempts to diminish the value of the reviewing physicians' opinions by claiming that they are based solely on the CE's findings. The Court, however, takes seriously the

5

*96-6p* (explaining that findings of fact by agency physicians are expert opinions upon which ALJs may rely).

The evidence of manipulative difficulties that Plaintiff cites is unpersuasive, primarily because most of it predates her surgeries.[4] The post-surgery evidence similarly fails to demonstrate what Plaintiff claims. For example, she cites records from her pain management specialist, Dr. Mehta, that indicate she should not return to work. But Dr. Mehta's reports pertain largely to Plaintiff's neck and back pain (which the ALJ accounted for) and do not suggest that he recommended she avoid work because of any problems with her hands.[5]

The only documents that might suggest otherwise are portions of Dr. Mehta's notes from 2010 and 2011, which show, in Plaintiff's view, "reduced muscle strength in her bilateral hands." (Pl.'s Br. at 8.) But the "reduced muscle strength" to which she refers is not gleaned from Dr. Mehta's notes. Rather, it appears to be Plaintiff's own interpretation of the difference between a 5/5 in "grip strength" observed by the CE and a 4/5 in "upper extremity motor strength" observed by Dr. Metha. (*See, e.g.,* R. 584, 591, 624, 768.) The problem with this comparison is twofold. First, upper extremity strength is a broader category than grip strength, and Plaintiff has not argued why a 4/5 in the former should translate to any manipulative limitations

---

reviewing physicians' statements that each reviewed the entire record. But even assuming they did not, Plaintiff's own physician noted normal grip strength and negative carpal tunnel tests in her right hand just a month after her surgery. (*See, e.g.,* R. 462.)

[4] *See, e.g.,* Pl.'s Br. at 7 (citing R. 372, 375, 399-400, 403-04, 406-07).

[5] Moreover, many of the excused-medical-absence notes to which Plaintiff refers are checklist forms that provide little or no explanation of her impairments. Those notes are therefore of limited value to assessing whether Plaintiff's carpal tunnel syndrome persists.

regarding the latter. Second, nothing in Dr. Mehta's reports indicates that he administered any particular grip test, much less the battery of grip tests administered by the CE. Therefore, Dr. Mehta's reports are simply not probative of whether and to what extent Plaintiff suffers from manipulative limitations.[6]

At best, Plaintiff simply doubles down on her claim that her carpal tunnel syndrome (or related manipulative difficulties) persists without providing any relevant medical evidence to support it. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (explaining that the claimant "bears the burden of supplying adequate records and evidence to prove [her] claim of disability") (citation omitted); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). Accordingly, the Court finds no error in the ALJ's decision not to include any manipulative limitations in Plaintiff's RFC.[7]

## II. Plaintiff's Treating Physicians

Plaintiff next asserts that the ALJ violated the treating physician rule by discounting the opinions of her treating doctors from 2009 (Dr. Baylis, Dr. Skomurksi, Dr. Schlenker, and Dr. Pareja) (the "2009 Doctors"), as well as the

---

[6] Of course, Dr. Mehta's reports are littered with Plaintiff's subjective complaints of pain, but the ALJ properly discredited those complaints, as explained below.

[7] Plaintiff further claims that the ALJ completely ignored evidence that she suffers from cervical radiculopathy, but this is a red herring. Although the ALJ did not specifically mention that term, she referred at various points to the records containing diagnoses of cervical radiculopathy (both by Dr. Mehta and Plaintiff's neurologist), and proceeded to analyze the evidence of Plaintiff's back, neck, and upper-extremity pain. The Court is therefore satisfied that the ALJ was sufficiently aware of Plaintiff's cervical radiculopathy.

7

opinion of Dr. Mehta. The treating physician rule requires ALJs to give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527. If the ALJ declines to do so, then he must offer "good reasons for discounting the opinion" in light of the following regulatory factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted) *accord* 20 C.F.R. § 404.1527.

With respect to the 2009 Doctors, the ALJ rejected their opinions because they concerned Plaintiff's carpal tunnel syndrome, many of them predated her surgery, and the work-place restrictions they suggested were intended to be only temporary. Combined with the CE's more-recent, comprehensive evaluation and the opinions of the reviewing physicians — all of whom found that Plaintiff had no manipulative difficulties — the ALJ found that the factors of supportability[8] and consistency[9] warranted assigning little weight to the 2009 doctors. The Court finds no error in this analysis, much less reversible error. *See* 20 C.F.R. § 404.1527.

Concerning Dr. Mehta, the ALJ discounted his opinion because most of his reports appeared to be based on Plaintiff's subjective complaints, rather than

---

[8] *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

[9] *See* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.")

8

diagnostic findings, and because his insistence that Plaintiff remain off work is an opinion on an issue reserved to the Commissioner. The first reason is plainly valid. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The second deserves some discussion.

SSR 96-5p provides that (1) a medical opinion indicating a claimant is "unable to work" cannot be given controlling weight because that issue is reserved to the Commissioner, but also that (2) even where a physician opines on such an issue, ALJs should nonetheless consider the basis of that opinion and determine whether it supports a finding of disability. *See* SSR 96-5p. In that respect, Plaintiff claims the ALJ misinterpreted language in Dr. Metha's reports (e.g., "[Plaintiff] should not return to work")[10] as a conclusory assertion of disability and thereby rejected it as an opinion on an issue reserved to the Commissioner. According to Plaintiff, however, the ALJ should have viewed the reports longitudinally and considered whether Dr. Mehta's consistent recommendation that Plaintiff remain off work qualifies as evidence of her disability. But putting aside whether there is a meaningful difference between the phrases "unable to work" or "should not return to work," Plaintiff's argument fails for the simple reason that the ALJ did not reject out of hand Dr. Mehta's opinion. To the contrary, the ALJ considered the basis of Dr. Mehta's reports, their consistency with other diagnostic findings on record, and concluded that they were entitled to only little weight, which is all that was

---

[10] (Pl.'s Br. at 12.)

required.[11] *See* SSR 96-5p. The Court therefore affirms the ALJ's treatment of Plaintiff's treating physicians.

### III. Plaintiff's Credibility

Lastly, Plaintiff argues that the ALJ misjudged her credibility. To overturn an ALJ's credibility determination, a plaintiff must show that it was "patently wrong" and "lack[ing] in any explanation or support." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). This is a very deferential standard, particularly because "a reviewing court lacks direct access to the witnesses, lacks the trier of fact's immersion in the case as a whole, and lacks the specialized tribunal's experience with the type of case under review." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

Here, the ALJ discredited Plaintiff's testimony on three grounds: (1) the objective medical evidence did not support Plaintiff's claims of disabling pain and limitations; (2) she failed to obtain an EMG, which was suggested by her neurologist in order to diagnose the source of her pain; and (3) she reported a significantly greater ability to perform daily tasks in her pre-hearing forms than she did at the hearing. Plaintiff challenges each of these reasons, but none of her arguments demonstrates that the ALJ's credibility finding was patently wrong.

---

[11] Plaintiff also suggests, without arguing, that the ALJ should have contacted Dr. Mehta to discern the basis of his recommendation that Plaintiff refrain from work. But ALJs need only recontact a treating source if the medical support for the opinion is not readily discernible. *See Skinner v. Astrue,* 478 F.3d 836, 843 (7th Cir. 2007) ("ALJs may contact treating physicians for further information when the information already in the record is 'inadequate' to make a determination of disability."). Here, the ALJ indeed discerned and discussed the evidence upon which Dr. Mehta relied (viz., Plaintiff's subjective complaints). The record was therefore not "inadequate."

10

Concerning the lack of support for Plaintiff's claims, it is well-settled that ALJs may rely on a paucity of medical evidence to discredit a claimant's testimony about her limitations. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). And that is precisely what we have here. At the hearing, Plaintiff testified that she could not so much as pick up a business card without feeling intense pain, but, as discussed above, there is no diagnostic medical evidence in the record to support that claim. In fact, the CE's diagnostic findings demonstrate just the opposite. The ALJ thus properly based her credibility finding on the lack of evidence supporting Plaintiff's claims, and the Court affirms that decision.

To be fair to Plaintiff, the ALJs other reasons for discrediting her testimony are somewhat unsound. As Plaintiff explained, she failed to obtain an EMG because she did not have insurance. The ALJ was aware of this, but nonetheless found her testimony less believable because she did not "aggressively [seek] subsidized or free medical care." (R. 34.) This is puzzling given Plaintiff's otherwise rigorous treatment history, which includes visiting several specialists and seeing myriad doctors over the years. The Court is thus unwilling to hold Plaintiff's failure to follow up on one test against her. Similarly, with respect to Plaintiff's daily activities, the discrepancies between her reported activities before and after the hearing are minimal and only marginally reflect on her credibility, if at all. But these flaws in the ALJ's credibility finding were harmless at worst.

Even if the Court were to fully credit Plaintiff's testimony, the ultimate issue boils down to the objective supportability of her claims. As discussed above, the ALJ

properly determined that evidence does not show any need for manipulative limitations in her RFC. And in terms of her alleged neck/back pain, the ALJ gave Plaintiff the benefit of the doubt by limiting her to medium work with additional postural limitations, despite the CE and reviewing physicians opining that she could perform the full range of medium work. On appeal, Plaintiff has not provided any medical evidence to suggest otherwise, except, of course, Dr. Mehta's reports (which were based largely on Plaintiff subjective complaints) and the 2009 doctors (whose opinions are hardly probative of Plaintiff's post-surgery capabilities). At bottom, then, Plaintiff merely attempts to cast doubt on the validity of the CE's and reviewing physicians' findings and insists that her carpal tunnel syndrome (or related manipulative difficulties) persists. Those arguments are insufficient to support a claim for disability, and the Court therefore affirms the ALJ's decision in its entirety.

## CONCLUSION

For the above reasons, the Court denies Plaintiff's Memorandum in Support of Summary Reversal or Remand, and grants the Commissioner's Motion for Summary Judgment [Doc. No. 24].

**SO ORDERED.**   **ENTERED:**

**DATE:   September 1, 2015**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**